2018-16-44, Mr. Davis. Thank you, Your Honors. Good morning.  The appellate should win this case for three separate reasons. First reason, under the Berkheimer and Atrix decision. Those decisions establish that where, as here, there is a complaint that has well-grounded factual allegations that the claimed invention is directed to an improvement in the computer technology itself, not to generic components performing conventional activities. That those allegations must be accepted as true and construed in the light most favorable to the plaintiff. So in such a situation, it's improper to grant a motion to dismiss based on 101. Second reason, the appellate should win. Under Alice, step one, the claimed inventions here are not abstract. Rather, they improve the functionality and utility of Internet communications and are thus patent eligible. Third reason, the appellate should win. Under Alice, step two, even if the claimed inventions are found to be abstract, the claimed inventions reveal an inventive concept in the ordered combination of claimed elements. These are not generic components performing conventional activities. Rather, what we have here is a special purpose device. So those are the three main reasons. What I'd like to do right now is get a bit more into the Alice steps one and two. In order to have proper context, I'd like to discuss the technology of the patent I'd issue here. That's the 335 patent. Before you go into that, let me just question you a bit about your first argument. Yes, Your Honor. Are you saying that as long as the complaint plausibly alleges to a point of getting over Iqbal and Twombly, that there is an improvement in computer technology, that that is enough to defeat a 101 motion to dismiss? Your Honor, I'm not quite certain what you mean by plausibly alleges. Well, I'm using it in the sense that Twombly and Iqbal use it for purposes of determining whether a motion to dismiss under 12b-6 can be granted. My position, Your Honor, is that under the Berkheimer and Atrix decisions, I think that the word I used was well-grounded. So I don't believe that it could just be any old allegations. I believe that there have to be allegations in the complaint for sure, and those allegations need to be backed up in this instance by the patent, which is what we have here. Can you tell me what the allegations are in the complaint? Where would you like to direct me to that you think there are allegations that satisfy the standard? Sure. If we could go to, I believe, the best paragraph in the complaint is going to be paragraph 11 of the amended complaint. Where would that be in the record? That is appendix 110. So I don't know if Your Honor would like to read that or if you would like me to read and discuss. Why don't you read it briefly? Okay. So paragraph 11 in the amended complaint indicates, at least in part, that the inventions claimed in the 335 patent constitute novel and non-obvious ways of providing an Internet third-party data channel to address shortcomings in existing communications protocols. It goes on to explain how this is done in a technical manner by introducing a distinct processing device located physically and logically between a client and a server. And that processing device, what it does is it monitors the client-server communications having predetermined properties such as HTTP status codes. And upon detection of those communications, it accesses a data source to obtain this third-party data and then modifies or replaces the original data communications in response to that data and then provides a resulting communication. Importantly, this paragraph, paragraph 11, indicates that, furthermore, to better utilize networking and computing resources in certain claim inventions, data is only transmitted on the third-party data channel when the data transmission rate of the server is below a predetermined threshold. But that really is, for the most part, just a recitation of Claims 8 and 24, isn't it? That last bit about only transmitted on third-party data channels, certainly that language comes from. That's 8 and 24, but I mean the rest of it incorporates Claims, what is it, 1 and 19? Are those the two independent claims? 1 and 18. 1 and 18, yes. I don't see a whole lot more there. There's a reference to HTTP, which doesn't show up in the claims. But other than that, it looks like just a recitation of the claims. The other part, Your Honor, is at the beginning of the same sentence, the last sentence that talks about the limitations of Claims 8 and 24, that is, furthermore, to better utilize networking and computer resources. That phrase right there is important because it actually can be tied directly to the specification. If we look at this, it does all relate to Claims 8 and 24, Your Honor, but if you look at the specification by way of example in either Column 3 or Column 5, let's start with Column 3 of the 335 patent, starting at line 63. It is further preferred to use a third-party data channel only when the transmission load originating from the server is low. Thus, the efficiency of the user's Internet connection can be increased. So that's an improvement to the technology. The other example is in Column 5, starting at line 40, let's say 47. Generally, status codes are well-suited as predefined data codes to trigger operations of third-party data inclusion mechanisms, Step 42. In the present sample embodiment, status codes representing error conditions are used. Such status codes signal that no message body could be provided by the server, such that the bandwidth of the channel section can be used for transmitting third-party data without impeding any data transfer from the server to the client. Those two recitations in Column 3 or Column 5 are related. They both relate to Claims 8 and 24. They both increase the efficiency of the user's Internet connection. How that happens is you have in the claimed invention the processing device, which is between the client and the server. After the client has asked the server for a document, the server, by way of example, is going to recognize, oh, wait, I don't have this document, send back a status code that says not found. That's that status code 404 that we've probably all seen on our computer screen at some point, don't really know what it means. Once that happens, the processing device recognizes, oh, there's a communication that's just this status code. There's no other information forthcoming. The document is not there. There's this available bandwidth. The processing device realizes that, and only in that situation does it get the third-party data, insert it into the communication, push it along to the client. So that's the operation. And the benefit is to increase the efficiency of the Internet communications, Your Honor. And my position, our position, is that the allegations and claim, or sorry, in paragraph 11 of the amended complaint, get us there. The district court said the patent is directed to the abstract idea of monitoring a data stream and modifying it when a specific condition is identified. Abstract idea. That's what the district court said. Respectfully, I disagree with the district court and do not believe that there's an abstract idea. Rather, what we have is a claimed invention that actually improves the functionality and utility of the Internet communications and is thus patent eligible. Does it do it only by software, or are there physical aspects to the claims? I believe, Your Honor, when you actually get into this patent, I always like to think this patent is an onion. But when you get into the patent, you actually recognize that it could be all software, but it could be hardware or software. Or software, I mean. Isn't it the case, though, it really could be anything that achieves the function that's described in the claims? I mean, it seems to me that as I read these claims, they are describing something that works in the following way. That is to say, it achieves the following objective without identifying with specificity exactly how you get to accomplish that goal. Well, respectfully, Your Honor, I disagree. I believe that the claims, let's use the example of Claims 8 and 24 again. How one ordinary skill in the art would view Claims 8 and 24 is they would read that and they would recognize, of course, that you have to read the claims in the context of the specification. And they would go to the exact portions of the specification that I just directed you to, and that is in columns 3 and 5, and recognize that what is happening there in those claims, in the claim language, is that the processing device, and this is a how, it's not results-based. It's a how. This is how it's happening. The processing device is looking at the status code from the communication from the server, recognizing that status code indicates that there's some available bandwidth in the communication. The argument is that the invention is that when there's space available, we will use the space? I think that's an oversimplification. In what respect is it oversimplified? It seems to me that's exactly what the Claims 8 and 24 add. Well, it's an oversimplification because I think everything's in the context of the Internet communications  I understand, but the rest of Claims 1 and 18 look to me, and you went to 8 and 24, because those have arguably more specificity than 1 and 18, but if you just look at what 8 and 24 contribute, it doesn't look like it's much more than the way I described it. Well, 8 and 24, of course, they're dependent claims. They depend on 1 and 18, so you have to take the features of 1 and 18 into account as well. And 1 and 18 separately and independently also describe how they're not just results-based. They indicate that the processing device is going to look at the predetermined properties of communication. But any predetermined property, right? No, the predetermined property is not defined with any specificity. It is correct that the claim language there says predetermined property. We believe it's an issue as to, all right, well, what exactly is predetermined property? That was one of the problems with the decision down below. It could be anything, couldn't it? I don't think it could be anything in the context of the specification. How does the specification limit it, and how limiting is it? The specification refers to, by way of examples, the data codes that are associated with the different communications, similar to the data codes that we've mentioned. They don't necessarily have to be the error codes that tell you that there's available bandwidth, but codes that are associated with every Internet communication, you know, very, very specific. Counsel, you're into your rebuttal time. You can continue, or we'll save it for you.  Mr. Garza. May it please the Court. Anthony Garza for CloudFlare and Encapsula. The claims here broadly preempt the idea of monitoring and modifying in-transit Internet communications, and like Judge Bryson said, it allows anything that achieves the function of this claim. You don't need any sort of specific device to monitor the data stream. There is no limited predetermined properties that would trigger these modifications, and there's no narrow set of rules that you have to abide by when determining how to modify these communications. This is broad preemption and bails under ALIS. I'll start by jumping to ALIS Step 2 and Blackbird's allegations about its pleadings, and I think Judge Bryson was right to jump to Iqbal and Twombly, saying assuming that these statements in the complaint passed Iqbal and Twombly, but you can see by looking at Paragraph 11, it is a mimicking of Claims 1 and 18, plus Claims 8 and 24, along with conclusory allegations that these are novel and non-obvious. Those are the types of statements and complaints that fail Iqbal and Twombly as a matter of law. So here we don't need to go anywhere because these wouldn't have made it passed Iqbal and Twombly had the district court had the opportunity to consider it. Again, these paragraphs were not cited to the district court in the briefing, and the district court wasn't appointed or asked to look or defer to these statements. Even further, however, I think it's telling to note that when it was time to address where in the claims these allegations went to, my colleague went straight to Columns 3 and 5 of the specification rather than going to the claims, and that's because the claims are very broad and do not include the type of narrow limitations that tie to the points in the specification that my colleague was pointing to. For example, in Column 5, Column 5 specifies the use of error codes in combination with an idea of limited bandwidth. Those two combinations are not tied together in the claims. Claim 8 does require the idea of limited bandwidth, but Claim 8 does not require the use of error codes. It only requires the use of any sort of predetermined property. Again, if you have an inventive concept that's not limited in the claims, if it's not required in the claims, it doesn't help you for Alice because my colleague's statements were not reflected in the claims. It doesn't help them beat Alice Step 2. As far as Alice Step 1, the claims here are abstract. As explained in our briefing, the idea of reviewing and modifying in-transit communications is not a creature of the information age. It's something that the military does and prisons do. They edit and redact communications based on properties of those communications. The patent limits this to electronic communications and communications using the Internet, but that doesn't change the fundamental nature of the claim. The claim is still abstract. Because these claims are abstract and there's nothing in the Alice Step 2 analysis that transforms the claim into something inventive, it fails and the court should affirm the district court's judgment. Do you want to address venue at all? Because the patents or the claims fail Alice, we don't think the court needs to address venue. And I do want to make sure not to shortchange what the Delaware District Court did. They do have a very detailed 20-page opinion based on an extensive record. But if I wanted to make it in short, there's extensive evidence in the record that there are many witnesses where this would be much more convenient to proceed in San Francisco rather than Delaware. As a result, the court's balancing under Jamara can't be found to be an abuse of discretion on this record. You make the argument, I think, that there is a jurisdictional impediment to our deciding the venue issue. There is, Your Honor. I understand why the Ninth Circuit might think they had a jurisdictional impediment because they would not want to review the position taken by an out-of-circuit district court. But there's no such thing as an out-of-circuit district court when it comes to us. That's true, Your Honor. The district court of Delaware is just as reviewable as the Northern District of California. Yes. So why don't we have jurisdiction to decide whether the district court in Delaware made an error? So the policy of the Federal Circuit is to follow regional circuit law. And by the way, the Ninth Circuit is not alone in this. The Ninth Circuit is not the only circuit to say we won't review out-of-circuit transit decisions. That's fairly common. I think it's majority rule. So we follow out-of-circuit, the regional circuit law when it pertains to the same situation. But I'm suggesting to you, don't you think that our situation is rather different in that the very reason that the Ninth Circuit doesn't regard itself as having jurisdiction over an out-of-circuit district doesn't apply to us? The situation is different, but not in a way where the Federal Circuit should not follow Ninth Circuit law. So the Federal Circuit, it's their policy to follow circuit law unless there's a reason of substantive patent law to not apply the Ninth Circuit's rule. This has nothing to do with substantive patent law. This is about the comparative structures of the Federal Circuit and the Ninth Circuit. Because it has nothing to do with substantive patent law, you should defer to the Ninth Circuit's rule. It seems to me you have a somewhat easier task to argue waiver pursuant to the Citric... I think I have the name of the case right. Citric, yes. Citric against DreamWorks case where there was waiver found. In fact, it's not terribly different from this. Correct. And I think the Ninth Circuit would recognize this as either a jurisdictional issue or a waiver issue. Well, they have to decide the jurisdictional issue first. Correct. Whether or not the court finds jurisdiction, yes. The failure to move for transfer again in the district court in California does waive the issue as well. Unless the court has any other questions, I'm happy to defer the rest of my time. Thank you, counsel. Mr. Davis has a couple of minutes for rebuttal if you need it. Thank you, Your Honors. Just a couple of points. First, my colleague indicated that I in no way tied the claims to the so-called improvements     I think that's a good point. I think that's a good point. Let me clarify that. So in claims 8 and 24, I said this before, but perhaps it needs to be more clear. The way one of ordinary skill in the art is going to look at that claim and understand it is to know that based on the same columns that I directed you to before, columns 3 and 5, that this is the operation that is happening, and that is what is going on in the claims. Third-party data channel, when the data transmission rate of said server to said client is below a predetermined threshold, so there are terms there that you throw around, and if you just look at those in a vacuum, you may think one thing, and then we, of course, recognize that we need to look at the context and specification, and once you do that, one of ordinary skill in the art would immediately be drawn to columns 3 and 5 and recognize that what is going on in terms of the functionality is an increase in the efficiency of the Interact connection. The other point I'd like to make, Your Honors, is once again I'd like to direct you to the Berkheimer and Atrix decisions. We believe that those apply here, paragraph 11 and also in context paragraph 10. Those paragraphs establish the allegations that the court below should have considered, and they're supported by the specification. There was no way, of course, for us to raise that below because the same day the Berkheimer decision came out was the day of the oral argument below, and then 6 days later the Atrix decision came out in between the district court made its decision. Thank you, Mr. Davis. We'll take the case under advisement.